**David MACKEY, Appellant,**

v.

**BRADLEY MOTORS, INC., Appellee.**

**No. 07–93–0100–CV.**

Court of Appeals of Texas, Amarillo.

Jan. 14, 1994.

Opinion Denying Rehearing Feb. 18, 1994.

Laurence Alan Bransgrove, Amarillo, for appellant.

Ronald D. Nickum, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

POFF, Justice.

Appellant David Mackey appeals from a default judgment rendered in favor of Bradley Motors, Inc., appellee. In his first point of error, Mackey contends that the trial court erred in entering the default judgment because he was not afforded a jury trial on the issue of unliquidated damages. In his second point of error, Mackey argues that the court's default judgment was erroneous because the judgment failed to conform to the pleadings on file. In his third point of error, Mackey maintains that the trial court erred in failing to set aside the default judgment upon his motion for new trial. We will sustain points of error one and two. We will overrule point of error three. We will reverse the judgment of the trial court and remand the cause to that court for a trial solely on the issue of damages.

Bradley Motors brought suit against Mackey on August 27, 1991, alleging violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA). Tex.Bus. & Com.Code Ann. §§ 17.41–17.854 (Vernon 1987 & Supp.1994). Mackey filed an answer as well as a counterclaim. Mackey also requested a trial by jury and paid the required jury fee.[1] The case was set for trial on the jury docket on February 2, 1993. On January 28, 1993, Mackey's attorney spoke to the trial judge and opposing counsel by means of a telephone conference call at which time he made an oral motion for continuance. That motion was denied.

The case was called for trial on February 2 as scheduled. Bradley Motors announced ready for trial but neither Mackey nor his counsel appeared. Mackey's name was called both in the courtroom and in the hallway outside the courtroom and then the case proceeded to trial. Bradley Motors waived trial by jury, presented testimony and exhibits to the court, and made a record. On the basis of the record, the trial court entered judgment in favor of Bradley Motors for

---

1. Bradley Motors does not challenge the contention made by Mackey in his brief that he requested a jury trial and paid the requisite jury fee. Therefore, we accept Mackey's statement as true. Tex.R.App.P. 74(f).

$1,500 in actual damages and $4,500 in attorney's fees. The court ordered that Mackey take nothing on his counterclaim. The court also entered other orders which we will address later in this opinion. Subsequently, Mackey filed a motion for new trial which was overruled by operation of law.

■ Because Mackey filed an answer to Bradley Motors' petition, it is evident that the default judgment in this case was a post-answer default judgment, as opposed to a no-answer default judgment or a judgment *nihil dicit*. *See generally Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979). Unlike a no-answer default judgment and a judgment *nihil dicit*, in the case of a post-answer default judgment it cannot be said that the non-answering party has admitted the facts pled and the justice of the opponent's claim. "A post-answer 'default' constitutes neither an abandonment of defendant's answer nor an implied confession of any issues thus joined by the defendant's answer. Judgment cannot be entered on the pleadings, but the plaintiff in such a case must offer evidence and prove his case as in a judgment upon a trial." *Id.*

■ Mackey recognizes that a trial court may properly enter a post-answer default judgment where the plaintiff has, as in the present case, offered evidence and proved his case at trial. *See id.; Maldonado v. Puente*, 694 S.W.2d 86, 91 (Tex.App.—San Antonio 1985, no writ). Mackey's disagreement with the trial court's judgment is based on his belief that, although the court was entitled to enter an interlocutory default judgment establishing liability, the court was still required to afford him a trial by jury on the amount of unliquidated damages since he requested a jury trial. Mackey's position is grounded on Texas Rule of Civil Procedure 243 which provides:

> If the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the

judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket.

It is clear that the actual damages in the case at bar are unliquidated and cannot be proved by an instrument in writing.[2] And it is a settled proposition that a claim for attorney's fees is an unliquidated claim. *Siddiqui v. West Bellfort Property Owners Ass'n*, 819 S.W.2d 657, 659 (Tex.App.—El Paso 1991, no writ); *Sunbelt Tectonics, Inc. v. Ramirez*, 742 S.W.2d 771, 775 (Tex.App.—San Antonio 1987, no writ); *First Nat'l Bank of Irving v. Shockley*, 663 S.W.2d 685, 690–91 (Tex. App.—Corpus Christi 1983, no writ). Thus, the question of whether the trial court erred in rendering a judgment awarding Bradley Motors actual damages and attorney's fees without affording Mackey a chance to contest the award before a jury is squarely before us.

■ A judgment by default does not dispense with the necessity for evidence of unliquidated damages. *Holt Atherton Indus. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *Illinois Employers Ins. Co. of Wausau v. Lewis*, 582 S.W.2d 242, 246 (Tex.Civ.App.—Beaumont), *writ ref'd*, 590 S.W.2d 119 (Tex.1979); *Morgan Express, Inc. v. Elizabeth–Perkins, Inc.*, 525 S.W.2d 312, 314 (Tex.Civ.App.—Dallas 1975, writ ref'd). "After a default judgment is granted, the trial court must hear evidence of unliquidated damages." *Holt Atherton Indus. v. Heine*, 835 S.W.2d at 86; *see also* Tex.R.Civ.P. 243; *Morgan Express, Inc. v. Elizabeth–Perkins, Inc.*, 525 S.W.2d at 314. The Texas Supreme Court has referred to the hearing on liquidated damages as a "Rule 243 hearing," an "assessment of damages hearing," and a "damage assessment hearing." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984). The law is clear that the defaulting party has the right to be present at such a hearing. As stated by our current Chief Justice Reynolds in 1976:

> It is the Texas rule, as well as the general rule, that upon an inquiry into the amount of unliquidated damages after a default judgment, the defendant has the right to

2. The $1,500 actual damage award is based on the difference in market value of a 1988 Dodge

pickup truck at two different points in time.

be present, to interpose objections to testimony offered by plaintiff's witnesses and to cross-examine them in order that, by the exclusion of improper evidence, a proper judgment may be rendered on competent and sufficient evidence.

*Rainwater v. Haddox,* 544 S.W.2d 729, 733 (Tex.Civ.App.—Amarillo 1976, no writ); *see also Helfman Motors, Inc. v. Stockman,* 616 S.W.2d 394, 397 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.); *Illinois Employers Ins. Co. of Wausau v. Lewis,* 582 S.W.2d at 246.

Not only may the defendant contest the plaintiff's proof, he may also present proof of his own on the issue of damages. *Fiduciary Mortgage Co. v. City National Bank of Irving,* 762 S.W.2d 196, 199 (Tex.App.—Dallas 1988, writ denied); *Maywald Trailer Co. v. Perry,* 238 S.W.2d 826, 827–28 (Tex.Civ. App.—Galveston 1951, writ ref'd n.r.e.). In *Maywald,* the court of appeals declared:

> [I]n an inquiry of damages upon a default, all of the plaintiff's material allegations are to be taken as true, and the determination of the amount of the damages to be awarded is all that remains to be done. In the trial of the question of damages, the defaulting defendant has the right to be heard and participate. He may cross-examine witnesses, and may offer proof in mitigation of damages, or as to an adjustment or payment of the amount claimed. The defendant may in effect even defeat the action by showing that no damages were caused to the plaintiff by the matters alleged, but there is authority for the rule that the greatest effect that could be given to the evidence of the defendant would be to reduce the inquest to nominal damages, and not to defeat the action.

*Id.* at 827.

■ While a defaulting party has the right to be present at a damage assessment hearing, it is evident that in the typical no-answer default judgment situation the defaulting party will not be in attendance. This is because the damage assessment hearing will often follow on the heels of the trial court's rendition of an interlocutory default judgment establishing liability. The non-answering defendant will almost never be present for the rendition of the interlocutory default judgment. As our supreme court has recognized, damage assessment hearings are often uncontested and evidence of unliquidated damages is many times not fully developed. *Holt Atherton Indus. v. Heine,* 835 S.W.2d at 86. The law does not require that a non-answering defendant who is not present when the interlocutory default judgment is rendered be given separate notice of the damage assessment hearing. *Long v. McDermott,* 813 S.W.2d 622, 624 (Tex.App.— Houston [1st Dist.] 1991, no writ); *K–Mart Apparel Fashions Corp. v. Ramsey,* 695 S.W.2d 243, 246 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Bass v. Duffey,* 620 S.W.2d 847, 850 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). The notice in the citation serves as notice of the damage assessment hearing and thus there are no procedural due process problems.

■ The situation is different, however, in the case of a post-answer default judgment where the defaulting party has demanded and is entitled to a jury trial.[3] In such a case, Rule 243 expressly provides that "the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket." The rule envisages that the trial court first enter an interlocutory default judgment establishing liability. Then the court is to award a writ of inquiry, which simply means that the court is to agree to

---

**3.** A party to a civil lawsuit is entitled to a jury trial where he has made a demand for a jury trial and has paid the correct fee within the time allowed by Tex.R.Civ.P. 216. *Hardy v. Port City Ford Truck Sales, Inc.,* 693 S.W.2d 578, 579 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). We note that the right to a jury trial does not inure to the party that did not demand the jury in all cases. *Green v. W.E. Grace Mfg. Co.,* 422 S.W.2d 723, 724–26 (Tex.1968). The non-demanding party is not assured a jury trial by virtue of the demand for a jury by his adversary. *Id.* The law requires that some affirmative action be taken by the non-demanding party to assure himself of a jury trial. *Id.* A party who does not timely demand a jury and pay the required fee must object to the withdrawal of the case from the jury in order to keep the case on the jury docket. *Id. See also Lambert v. Coachmen Indus. of Texas,* 761 S.W.2d 82, 85 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

hold a damage assessment hearing before a jury. *See Long v. McDermott*, 813 S.W.2d at 626 (O'Connor, J., dissenting) (a writ of inquiry is a hearing to determine unliquidated damages after default).[4] Finally, the writ of inquiry hearing should then be set on the trial court's jury docket. The law requires that the defaulting party be given notice of the writ of inquiry hearing. *Bass v. Duffey*, 620 S.W.2d at 850.

■ Although little has been written concerning the writ of inquiry, we can glean some basic information from the limited authority on the subject. The purpose of a writ of inquiry hearing is to determine the proper amount of damages to be awarded in a default judgment case where the cause of action is unliquidated. *Justice Life Ins. Co. v. Walker*, 508 S.W.2d 434, 439 (Tex.Civ.App.— Fort Worth 1974, writ ref'd n.r.e.). The writ of inquiry is understood to be a deferred hearing, *i.e.*, it is to take place at a time subsequent to the court's rendition of an interlocutory default judgment. *Id.* Clearly, the writ of inquiry hearing is to be conducted before a jury. It is inaccurate to describe a damages assessment hearing that occurs before the court as a writ of inquiry. It is the demand for a jury by the defaulting party that gives rise to the writ of inquiry. Thus, the writ of inquiry hearing, by virtue of its very genesis, must necessarily be held in front of a jury.

■ While it is clear that the express language of Rule 243 entitles a defaulting party who has made proper demand for a jury to a jury trial on the issue of unliquidated damages, Bradley Motors contends that a 1971 amendment to Tex.R.Civ.P. 220 negates that entitlement. The 1971 amendment added the following sentence to Rule 220: "Fail-

ure of a party to appear for trial shall be deemed a waiver by him of the right to trial by jury." The Dallas Court of Appeals has recently issued an opinion that directly addresses and supports Bradley Motors' contention. *See Hanners v. State Bar of Texas*, 860 S.W.2d 903, 911 (Tex.App.—Dallas 1993, n.w.h.).[5] However, we do not agree with Bradley Motors' contention or the *Hanners* opinion.

■ Rule 220 is a general rule pertaining to the waiver of the right to a jury trial for all purposes in default situations. Rule 243, on the other hand, is a specific rule concerning the right to a jury trial on the limited issue of unliquidated damages where the defendant shall demand and be entitled to a jury trial and there has been a judgment by default entered. It is a basic tenet of statutory construction that when a general statute conflicts with a specific statute, the two provisions should be construed so as to give effect to both. *See* Tex.Gov't Code Ann. § 311.026(a) (Vernon 1988). It is also well understood that a specific provision is to control over a general provision. Tex.Gov't Code Ann. § 311.026(b) (Vernon 1988).

Relying upon these basic precepts of statutory construction, we hold that pursuant to Tex.R.Civ.P. 243, a defaulting party is entitled to a jury trial on the issue of unliquidated damages where he has made a request for a jury and paid the jury fee. As to all other issues, the defaulting party has waived his right to have them determined by a jury of his peers. *See* Tex.R.Civ.P. 220.

The trial court erred in rendering its judgment for damages against Mackey without affording him a chance to contest the unliqui-

---

4. An actual writ does not issue. According to 8 Stayton Texas Forms § 4692 n. 3 (Vernon 1960), the issuance of an actual writ has become obsolete. At common law, however, an actual writ did issue. Black's Law Dictionary 1444 (5th ed. 1979), notes that in common law practice, a writ of inquiry was "a writ which issued after the plaintiff in an action had obtained a judgment by default, on an unliquidated claim, directing the sheriff, with the aid of a jury, to inquire into the amount of the plaintiff's demand and assess his damages."

5. In *Hanners*, the defendant filed an answer as well as a written request for a jury trial and paid the requisite jury fee some eight months prior to the date of trial. The court of appeals explained that

> [a]t that point, [the defendant] was entitled to a jury trial. However, [the defendant] waived his right to a jury trial when he failed to appear, either personally or through his attorney, at trial. *See* Tex.R.Civ.P. 220. By failing to appear personally or through his attorney at trial, he also waived his right to have a jury inquire into unliquidated damages.

dated damages issue before a jury. Point of error one is sustained. Our sustention of point of error one requires reversal of the trial court's judgment and remand of the cause to that court solely on the issue of damages. *See Bass v. Duffey*, 620 S.W.2d at 850.

■ In his second point of error, Mackey contends that the court's default judgment was erroneous because the judgment failed to conform to the pleadings on file. Specifically, Mackey charges that the default judgment entered by the court failed to conform to Bradley Motors' pleadings in several respects. First, the default judgment awarded $1,500 in actual damages while the pleadings only sought $500 in actual damages. Second, the default judgment contained a declaratory judgment affirming a contract between Mackey and Bradley Motors and stating that the contract was binding. Bradley Motors never sought a declaratory judgment in its pleadings. Third, additional language in the judgment purports to deny Mackey any rights of rescission against Bradley Motors. Other language validates the assignment of a retail installment sales contract to GMAC and declares that no grounds exist to rescind the contract. None of this relief was requested by Bradley Motors in its pleadings. Finally, the default judgment orders the State of Texas, a non-party, to reissue title to a certain motor vehicle.

Bradley Motors admits that the award of $1,500 in actual damages is improper and has accordingly tendered a remittitur of $1,000. Bradley Motors also acknowledges that the order directing the State of Texas to reissue title is not in conformity with the pleadings and should be deleted from the judgment. As to the court's declaratory judgment and its other language denying Mackey any rights of rescission and validating the assignment of the retail installment sales contract, Bradley Motors contends that the judgment is appropriately based on Mackey's pleadings. We disagree.

6. In the case of a post-answer default judgment, the language of *Craddock* can be changed slightly to read "in any case in which the failure of defendant to appear before judgment." *BMW*

■ In his First Amended Original Answer and Original Counterclaim, Mackey made several fact-specific denials as well as many factual allegations of wrongdoing on the part of Bradley Motors. But Mackey never requested a declaratory judgment or an order determining his rights of rescission or the validity of the retail installment sales contract. Therefore, the declaratory judgment and the other additional orders were improper. A judgment must be based upon the pleadings. *Stoner v. Thompson,* 578 S.W.2d at 682. The principle that a plaintiff will not be permitted to obtain relief on a cause of action which is not contained in the pleadings has been consistently applied to all three types of default judgments, including post-answer default judgments. *Id.* at 683; *see Maldonado v. Puente,* 694 S.W.2d at 90–91 (post-answer default judgment will lie where, *inter alia,* the judgment is in accordance with the pleadings). Point of error two is sustained. If this disparity between the pleadings and the judgment were the only error in this case, we could reform the judgment. However, as previously explained in connection with point of error one, a remand of the cause for a determination of the damages issue is necessary. Thus, we will not reform the judgment so as to conform with the pleadings.

■ In his third point of error, Mackey contends that the trial court erred in failing to set aside the default judgment upon his motion for new trial. In determining whether a trial court should have granted a defaulting party's motion for new trial, we adhere to the guiding law set forth in *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939):

A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment [6] was not intentional or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for new trial sets up a meritorious defense and is filed at a time

*Auto Ctr. v. River Oaks Bank,* 776 S.W.2d 689, 691 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

For the reasons set forth below, we find that Mackey's failure to appear was the result of conscious indifference.

The record shows that Mackey's trial attorney had filed an answer and was well aware that trial was scheduled for February 2, 1993. During a telephone conference call between Mackey's trial attorney, the trial judge and opposing counsel on January 28, 1993, Mackey made an oral motion to continue the case. According to the following recitation in the court's judgment, the motion for continuance was denied:

> On January 28, 1993, David Mackey, acting through his attorney of record, made a telephone request for a continuance of this case, which was denied. During a conference call between the Court, [Mackey's trial attorney], and [Bradley Motors' attorney], the Court informed the parties that the case would be called for trial at 9:00 a.m. on February 2, 1993.

Subsequent to the conference call, Mackey's attorney attempted to associate two fellow lawyers in the case. According to the affidavit of Mackey's attorney, neither of his fellow lawyers expressly agreed to associate in the case. The two lawyers did agree to consider associating in the case and to visit with the trial judge concerning the matter, however. Mackey's attorney's affidavit in support of the motion for new trial continues as follows:

> On Monday, February 1, 1993, I was involved in certain matters in Austin, Texas, and was out of the office, but asked my secretary ... to contact both [Lawyer 1] and [Lawyer 2] to determine whether they had made contact with [the trial judge] and the extent of such contact. In fact, I made a telephone call to my office from Austin to discuss this with [my secretary], who told me she had talked with [Lawyer 1] and that he had not been able to get in touch with [the trial judge], but would do so and if there was any problem he would let us know. This conversation took place sometime before noon on February 1, 1993. [My secretary] also told me she had not

been able to talk to [Lawyer 2], but had, in fact, talked to his office and that [Lawyer 2] was not in the office, but was at the Courthouse in Canyon, and they were sure that if he told me he would talk to [the trial judge], that he would, however, they would make sure he got the message and I told [my secretary] to call the office back to tell them to be sure to tell [Lawyer 2] that if there were any problems at all concerning this matter of the setting of February 2, 1993, to let me know. It is my understanding that [my secretary] did make the call and both offices were alerted that if there were any problems with this to let us know.

> \* \* \* \* \* \*

> It was not until sometime later during the week of February 8, 1993, that I learned that, in fact, a Default Judgment had been entered in the matter....

> Had I known that neither [Lawyer 1] or [sic] [Lawyer 2] were successful in obtaining a continuance in this matter, then I would have made arrangements to visit with the Court or be present on February 2, 1993, to protect Mr. Mackey's position. It is through no conscious indifference that I was not present, but through what was apparently a mistake or misunderstanding with [Lawyer 1] and [Lawyer 2's] offices, and/or with this Court concerning the conversation of January 28, 1993. There was certainly no intentional disregard for this hearing.

Even assuming that Mackey's attorney's affidavit states the truth, we are of the opinion that Mackey's attorney was consciously indifferent to his responsibility to appear for trial at the appointed time. The two lawyers that Mackey's attorney wished to associate in the case did not firmly commit to come into the case. Given the nature of his contact and conversations with his two fellow lawyers, Mackey's attorney was not entitled to ignore the jury trial. In our view, Mackey's attorney was consciously indifferent to his duty to appear for trial and in no wise may it be said that his failure to appear was due to mistake or accident.

On oral argument, Mackey basically admits that his trial attorney's conduct was indefensible and that the attorney exhibited a conscious indifference to the trial setting. However, Mackey contends that in the interest of justice we should not look at the conduct of his attorney, but rather at his own conduct in determining the conscious indifference question. Mackey contends that he himself was not consciously indifferent to the trial setting.

 We cannot agree with Mackey's contention. A defaulting party cannot excuse himself because of the negligence of his own attorney. *Conrad v. Orellana,* 661 S.W.2d 309, 313 (Tex.App.—Corpus Christi 1983, no writ). *See also Dreisbach v. Reed,* 780 S.W.2d 901, 903 (Tex.App.—El Paso 1989, no writ). Mackey's failure to appear was the result of conscious indifference. Point of error three is overruled.

The judgment of the trial court is reversed and the cause is remanded for a trial solely on the issue of damages.

### ON MOTION FOR REHEARING

In its motion for rehearing, Bradley Motors advances a credible policy argument, contending that our original opinion "will require trial judges to engage in the lengthy, expensive and inefficient exercise of a post-default jury trial on the issue of unliquidated damages." While Bradley Motors' policy argument has merit, we cannot accept its offer to hold that Rule 220 takes precedence over Rule 243. Unlike Rule 220, which speaks to the general right to jury trials, Rule 243 speaks specifically to jury trials in cases involving unliquidated damages. Under the rules of statutory interpretation, when a conflict occurs, the specific rule, 243, must take precedence over the general rule, 220.

Bradley Motors' policy argument should be addressed to the Supreme Court, which possesses rule-making and policy-making authority that we do not.

Appellant's motion for rehearing is overruled.